**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA BINGAMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **vs.** | ) | |
| | ) | |
| **LINCOLN LIFE ASSURANCE COMPANY OF BOSTON d/b/a LINCOLN FINANCIAL GROUP** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT**

COMES NOW Plaintiff Maria Bingaman, by and through undersigned counsel, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1001 *et. seq*., and for his cause of action against Defendant Lincoln Life Assurance Company of Boston d/b/a/ Lincoln Financial Group (hereinafter "Lincoln" or "Defendant"), respectfully states the following:

## Introduction

1. Plaintiff Maria Bingaman (hereinafter "Plaintiff" or "Ms. Bingaman") brings this action, against Lincoln for damages caused by the Defendant's breach of statutory, contractual, and fiduciary obligations and violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et. seq*. ("ERISA").

2. Ms. Bingaman seeks recovery and payment of benefits due under an employee benefits plan, statutory penalties, and costs and attorney's fees associated with this action, as provided by ERISA.

3. This is an action brought pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. §1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

4. Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and Defendant resides or are found in this district.

**Parties**

5. Ms. Bingaman is an individual residing in the Eastern District of Missouri. She is a vested participant in a Group Insurance Policy for certain employees of National Information Solutions Cooperative Inc. (hereinafter "NIS"), which provides an employee benefit plan within the meaning of 29 U.S.C. § 1132(a).

6. Ms. Bingaman has standing to bring this action as a beneficiary under 29 U.S.C. §1132(a).

7. Lincoln provides long-term disability coverage for certain employees of NIS under an employee welfare benefit plan (hereinafter "Plan") within the meaning of 29 U.S.C. § 1002. Specifically, Lincoln provides Long-Term Disability ("LTD") insurance benefits.

8. Lincoln is an insurance company incorporated in North Carolina and is doing business in Missouri under a license to do business as a Foreign Insurance Company.

9. Lincoln administers and pays benefits under the terms of the LTD plan and is a fiduciary within the meaning of 29 U.S.C. §1002(16).

10. Lincoln both decides a beneficiary's right to benefits and then pays those benefits under the plan.

11. NIS serves as the plan administrator and sponsor under the meaning of 29 U.S.C. § 1002(16).

**Facts**

12. In 2023, Ms. Bingaman was employed with NSI as a Learning Content Specialist.

13. The essential duties of this occupation are identified by her employer and the national job market as:

Essential Duties:

- Assist in analyzing the needs and scope or learning solutions as directed.
- Collaborate with Subject Matter Experts (SMEs) to gather content and context to ensure accuracy of learning related resources.
- Design, write and develop learning resources that deliver accurate content that engages learners including but not limited to videos, graphics, audio, software simulations, instructor-led courses, assessments, job aids, workbooks and other learning materials.
- Test resources to ensure accurate operation, learner understanding, responsiveness, etc.
- Coordinate learning development projects: following timelines, communicating requirements, tracking status, and meeting project objectives and goals.
- Promote learning and exhibit passion and dedication to ongoing improvement and development of solutions and services to assist NISC Members in maximizing their use of NISC products.
- Follow standard team procedures and processes for learning development, resource development and project management, providing suggestions for improving accuracy, efficiency and effectiveness efforts.
- Other duties as assigned.
- Commitment to NISC's Statement of Shared Values.

14. In July of 2023, Ms. Bingaman was returning home from Hawaii, when she suffered severe motion sickness leading to nausea and vomiting.

15. While recovering Ms. Bingaman fell from a seated position, struck her head, and lost consciousness.

16. Following hospitalization Ms. Bingaman experienced persistent cognitive difficulties, trouble focusing, fatigue, decreased attention span, and dizziness.

17. Ms. Bingaman was ultimately diagnosed with post-concussion syndrome, cognitive impairment, chronic headaches, PTSD and anxiety.

18. The symptoms of these conditions prevented Ms. Bingaman from being able to perform the material duties of her own occupation.

19. Lincoln approved and paid STD benefits under the STD provisions of the plan.

20. Ms. Bingaman attempted to return to work, but was unable to work for more than two hours a-day and was ultimately terminated from her employment.

21. On October 17, 2023, Lincoln approved long-term disability benefits, finding that Ms. Bingaman was unable to perform her own occupation.

22. Lincoln relied upon restrictions and limitations prescribed by her treating physicians.

23. It was also determined that if a return to work had not been documented prior to a year from her traumatic brain injury, a full neurocognitive evaluation would be necessary.

24. On September19, 2024, Lincoln denied Continued LTD benefits on the grounds that Ms. Bingaman no longer met the definition of disability under the plan.

25. This denial was not supported by any documented change in Ms. Bingaman's restrictions and limitations.

26. Lincoln's denial occurred prior to the full neurocognitive evaluation prescribed by her physicians.

27. On December 16, 2024, Ms. Bingaman underwent a Neuropsychological evaluation performed by Dr. Micahel Oliveri.

28. The objective medical findings from that evaluation, among others, were that:

> 1. **Prominent non-specific disorder of fundamental attention** --representing a cognitive disorder otherwise unspecified: The objective test data reflects levels of performance well below patients with established acquired brain-behavior dysfunction, due to the injury she sustained in July 2023 (per the severity indicators related to that injury). Specifically, on measures associated with attention/registration and processing speed, she is performing at exceptionally low levels -- exceeding patients with residual acquired MTBI, post-concussive sequelae at ~1 year 5

29. Dr. Olivari also opined that many of the mental nervous conditions experienced by Ms. Bingaman, which greatly contributed to her inability to perform material duties of her job, were tied to and associated with the 2023 concussion.

30. Relying on Dr. Olivari's objective findings, Ms. Bingaman submitted an appeal of the denial of her LTD benefits on March 17, 2025.

31. As part of its review of Ms. Bingaman's appeal, Lincoln retained Dr. Philip McCarthy, D.O. and Mercedes Dickinson, Ph.D. (collectively "Retained Reviewers") to perform a review of Ms. Bingaman's medical records and opine on her restrictions or limitations.

32. Lincoln utilized the third-party vendor Dane Street to obtain these reviewers and their opinions.

33. Dane Street has a documented history of biased and unethical practices in retaining reviewers and obtaining medical opinions.

34. There is no evidence in the claim file relating to what, if any, precautions Lincoln took to ensure that none of Dane Streets biased and unethical practices were utilized when obtaining the opinions of Dr. McCarthy or Mercedes Dickinson, Ph.D.

35. Neither Retained Reviewer interacted with or examined Ms. Bingaman in person.

36. Neither Retained Reviewer included any consideration of the symptoms of anxiety, documented cognitive decline, PTSD, or other issues that created restrictions and limitations that prevented Ms. Bingaman from performing her mentally rigorous job.

37. It was the consensus of the Retained Reviewers that:

- The consensus opinion, in this case, is that from the perspective of neuropsychology and neurology, there is no support for functional impairment translating into restrictions and limitations from 09/20/2024 to current and ongoing.

38. On May 16, 2025, Ms. Bingaman's physician Dr. Koo opined – in direct response to and in opposition to the opinions of the Retained Reviewers – that Ms. Bingaman was significantly impaired, stating that:

your opinion of the referenced individual's functional limitations during the above-stated period of time.

1. Concussion 7-10-23. With subsequent cognitive impairment, neuromuscular exhaustion syndrome, intermittent post-traumatic headaches, situational stress, PTSD, anxiety & insomnia.
2. Patient has severe anxiety & difficulty c̄ cognitive functions, including difficulty carrying out simple tasks due to getting overwhelmed so easily.
3. No lab findings to support her psychiatric diagnoses.
4. Anxiety & cognitive difficulties are the main barriers of Maria returning to work.
5. Psychiatric management will start c̄ psychiatric Team on 5/22/25. Response is yet to be determine. Prognosis: Fair.

**DATE:** 5/16/25

**SIGNATURE OF MEDICAL SOURCE:**

39. It was Dr. Oliveri's opinion that all anxiety and cognitive deficiencies were all tied to the concussion sustained in 2023.

40. Despite these objective findings and restrictions and limitations Lincoln upheld its denial of LTD benefits on July 1, 2025.

41. Lincoln's decision to deny continued benefits was not based on any credible medical evidence, but rather based solely on the opinions of the Retained Reviewers obtained through Dane Street.

42. Neither retained reviewer expressed or stated what was incorrect about the restrictions and limitations prescribed by Dr. Koo or disagreed with the findings of Dr. Oliveri that Ms. Bingaman had significant mental impairments and that her anxiety and cognitive deficiencies resulted from the 2023 Concussion.

43. Without such evidence or opinions, Lincoln's decision to maintain the denial of LTD benefits was arbitrary and capricious.

44. On July 16, 2025, Ms. Bingaman requested an updated claim file from Lincoln – Lincoln did not respond to the request in anyway.

**COUNT I**
**Wrongful denial of LTD Benefits pursuant 29 U.S.C. § 1132(a)(1)(b)**

45. Ms. Bingaman incorporates by reference all allegations set forth in paragraphs 1-44 as if fully set forth herein.

46. Ms. Bingaman is entitled to LTD benefits under the terms of the Plan, in that she was unable – due to sickness or injury – to perform the duties of her, or any, occupation.

47. Ms. Bingaman has provided substantial medical evidence demonstrating that she has been continuously and totally disabled under the terms of the Plan.

48. Despite the evidence that Ms. Bingaman is disabled under the Plan, Lincoln has denied LTD benefits.

49. As a result of Lincoln's wrongful denial of benefits, Ms. Bingaman has been damaged in the amount of unpaid benefits.

50. Lincoln's denial of Ms. Bingaman's STD benefits was arbitrary and capricious, and not based on substantial evidence.

51. Lincoln is required to pay the benefits due under the terms of the Plan, together with prejudgment interest, attorney's fees, and costs.

**WHEREFORE,** Plaintiff Maria Bingaman respectfully prays for judgment against Defendant Lincoln Life Assurance Company of Boston d/b/a/ Lincoln Financial Group in the amount of unpaid LTD benefits, for attorney's fees and costs, and for any other such relief as the court deems just and proper.

**COUNT II**
**BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. § 1132(a)(3)**

52. Ms. Bingaman incorporates by reference all allegations set forth in paragraphs 1-51 as if fully set forth herein.

53. Ms. Bingaman brings this claim against Lincoln under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

54. Lincoln is a Plan Administrator under the plan.

55. As a Plan Administrator, Lincoln both decides a beneficiary's right to benefits and pays those benefits thereby Lincoln bears an inherent conflict of interest.

56. Section 29 U.S.C. § 1104 codifies the fiduciary duties that Lincoln as Plan administrator owes to beneficiaries like Ms. Bingaman, they are the Duty of Loyalty and the Duty of Prudence.

57. The duty of loyalty requires the plan administrator to convey complete and accurate information material to the beneficiaries right to benefits under the plan.

58. The duty of prudence requires the plan administrator to act as a reasonably prudent claims adjuster would in the circumstances.

59. 29 C.F.R. § 2560.503-1 codifies the plan procedures that are required to be implemented in every ERISA governed plan in order to guarantee that Plan administrators fulfill their fiduciary duties and provide a full and fair review of all claims made under an ERISA governed plan.

60. Lincoln failed to adequately implement claims procedures that complied with 29 C.F.R. § 2560.503-1 and as a result, breached the dual fiduciary duties it owed Ms. Bingaman, in the following, but not limited to, ways:

a. Failed to implement claims procedures that met the requirements of § 2560.503-1.

b. Failed to timely communicate to Ms. Bingaman his right to LTD benefits...

c. Ignored evidence provided by Ms. Bingaman's physicians.

d. Filed to provide a full and fair review by relying on the opinion of the Retained Reviewers who never examined or interacted with Ms. Bingaman.

e. Failed to shield its employees and retained "experts" from its inherent conflict of interest as required by 29 § 2560.503-1(b)(7).

f. Failed to produce the claim file requested on July 16, 2025.

61. The above breaches are the byproduct of a review process that is not compliant with 29 CFR § 2560.503-1, which results in an exacerbation of the inherent conflict of interest of LINCOLN being both the decider and payer of benefits and permits Lincoln to routinely breach the fiduciary duties it owes to beneficiaries such as Ms. Bingaman.

62. The breaches were also the byproduct of Lincoln's arbitrary and inconsistent interpretation of plan provisions that were made to the detriment of Ms. Bingaman and in favor of Lincoln and Lincoln's financial interest in denying Ms. Bingaman's claims.

63. As a result of Lincoln's breaches of the dual fiduciary duties of loyalty and prudence owed to Ms. Bingaman under ERISA, Ms. Bingaman suffered actual harm, as she was denied benefits to which she was entitled under the Plan, she incurred attorneys' fees and costs, and she suffered other financial losses.

64. Lincoln breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, insofar as it failed to discharge its duties handling Ms. Bingaman's benefits claim in a careful, skillful, and diligent manner.

**WHEREFORE**, Plaintiff Maria Bingaman respectfully prays that this Court:

1) Grant judgment in his favor and against Defendant on all claims;
2) Order that Defendant pay restitution for all benefits that Ms. Bingaman is entitled to but for the Lincoln's breaches of fiduciary duties;
3) Declare Plaintiff's rights under the terms of the Plan, and clarify his rights to future benefits under the terms of the Plan;
4) Enjoin Defendant to provide a procedure for a full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1;
5) Enjoin Defendant to discharge its fiduciary duties in accordance with 29 U.S.C. § 1104;
6) Order restitution or surcharge to disgorge Defendant's unjust enrichment in wrongfully delaying and denying benefits and/or to make Plaintiff whole for losses, and payment of his attorneys' fees caused by Defendant's violation of 29 U.S.C. § 1133 and breach of fiduciary duty;
7) Order that Defendant pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and
8) Award all such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**DAVIS OLSZESKI, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis #MO58205
Adam J. Olszeski #MO66126
2704 Locust St., Ste 202
St. Louis, MO 63103
P: (314) 876-776
F: (314) 876-7877
matt@dodisabilitylaw.com
adam@dodisabilitylaw.com