**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA BINGAMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** 4:26-cv-00056-SEP |
| **vs.** | ) | |
| | ) | |
| **LINCOLN LIFE ASSURANCE COMPANY OF BOSTON d/b/a LINCOLN FINANCIAL GROUP** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MARIA BINGAMAN'S MOTION FOR LIMITED DISCOVERY**

COMES NOW Plaintiff, by and through undersigned counsel, and for her Memorandum of Law in Support of her motion for limited discovery states as follows:

## Introduction

This is an ERISA case for long term disability benefits provided under an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002. In the proposed scheduling plan, the parties identified that they did not agree on the scope of discovery permitted under ERISA as it applies to the facts in this case and in response the Court in its Case Management Order instructed Plaintiff to file a Motion for Discovery if discovery beyond the administrative record was necessary. This motion and memorandum follow.

## Background

Ms. Bingaman was employed by National Information Solutions Cooperative as a Learning Content Specialist, a cognitively demanding role requiring analysis, collaboration with subject-matter experts, design and writing of learning resources, testing of training materials, coordination of learning-development projects, tracking status, and meeting project objectives. [Adm. Rec. at

Lincoln/Bingaman 0031, 0049, and 0222]. Ms. Bingaman's job duties include analyzing the needs and scope of learning solutions as directed, collaborating with Subject Matter Experts (SMEs) to gather content and context to ensure accuracy of learning related resources. [*Id.*] This includes designing, writing and developing learning resources, coordinating learning development projects, following timelines, communicating requirements, tracking status, and meeting project objectives and goals. [*Id.*]

Ms. Bingaman suffered a concussion/head injury on July 10, 2023, after severe motion sickness, dehydration, syncope, and a fall in which she struck her head and briefly lost consciousness. [Adm. Rec. at Lincoln/Bingaman 0221-0225 and 1436]. Her medical records document ongoing diagnoses including post-concussion syndrome, cognitive impairment, generalized neuromuscular exhaustion, intermittent post-traumatic headache, situational stress, PTSD, insomnia, obstructive sleep apnea, and anxiety. [Adm. Rec. at Lincoln/Bingaman 0339-0342].

Lincoln initially approved LTD benefits beginning October 17, 2023. [Lincoln/Bingaman 0049]. The claim coversheet reflects a benefit begin date of October 17, 2023, an approved-through date of September 19, 2024, and a close date of September 20, 2024. [*Id.*]

Lincoln's September 19, 2024 denial stated that, based on medical documentation in relation to the requirements of Ms. Bingaman's occupation, she did not meet the policy definition of disability. [Adm. Rec. at Lincoln/Bingaman 0710-0714]. No change in definition of disability occurred under the terms of the plan. [Adm. Rec. at Lincoln/Bingaman 0049]. Nor did Lincoln point to any objective findings to support an improvement of Ms. Bingaman's condition as of September 19, 2024. [Adm. Rec. at Lincoln/Bingaman 0710-0714]. The only evidence supporting

the discontinuation of LTD benefits at this time was the medical opinion of Dr. Cirillo, which was obtained by third-party Dane Street LLC. [Adm. Rec. at Lincoln/Bingaman 0715-0720].

Ms. Bingaman timely appealed the denial on March 17, 2025. [Adm. Rec. at Lincoln/Bingaman 0221-0267]. As part of the appeal Ms. Bingaman provided peer review articles supporting that her condition and symptoms were not only connected to post-concussion disorder but were expected. [*Id.*] She also supported the results of neuropsychological evaluation that objectively found Ms. Bingaman to have experienced cognitive decline. [*Id.*]

During the appeal, Lincoln again relied upon medical opinions obtained through Dane Street, LLC for neurology and neuropsychology paper reviews. Lincoln's claim notes show that additional records were sent to Dane Street for addenda, that addendum reports were received from Dr. Philip McCarthy and Dr. Mercedes Dickinson. [Adm. Rec. at Lincoln/Bingaman 0050-0052] Neither reviewer ever interacted with nor examined Ms. Bingaman personally.

Lincoln upheld the denial on July 1, 2025, stating internally that the appeal evidence did not alter the prior claim determination and that the medical information was insufficient to substantiate continued disability beyond September 19, 2024. [Adm. Rec. at Lincoln/Bingaman 0002]

**<u>Standard of Review</u>**

When an ERISA plan administrator has discretionary authority, the proper standard of review is abuse of discretion, however, discovery beyond the administrative record may be appropriate when there are procedural irregularities and conflicts of interest. *McIntyre v. Reliance Std. Life Ins. Co.*, 972 F.3d 955, 959 (8th Cir. 2020) and first outlined in *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160-61 (8th Cir. 1998).

In *MetLife v. Glenn*, the U.S. Supreme Court stated that:

> Conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts –which themselves vary in kind and in degree of seriousness—for us to come up with a one-size fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress. …
>
> Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together.

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008) (internal citations omitted).

In response to that holding, the 8th Circuit adopted a modification to the abuse of discretion standard of review, which permits the Court to explore any conflicts of interest and procedural irregularities that exist in the administrative record and determine how such conflicts and irregularities affect the lawfulness of a Plan administrator's discretionary decision making. See *McIntyre v. Reliance Std. Life Ins. Co.*, 972 F.3d 955 (8th Cir. 2020).

Under this modification of the abuse of discretion standard, the District Court is obligated to weigh any evidence of conflict and/or irregularity to determine if the plan administrator abused its discretion. *Id*.

To be entitled to discovery under this standard the Plaintiff must show: (1) a palpable conflict of interest or procedural irregularities exist, which (2) caused a serious breach of the plan administrator's fiduciary duty. *See McIntyre*, 972 F.3d at 959. (citing and discussing *Woo*, 144 F.3d at 1160). Here, there is no dispute that a conflict of interest exists. As will be shown below, there are also procedural irregularities. Discovery is necessary to establish that those irregularities

and conflicts did not deprive Ms. Bingaman of the full and fair review she is entitled to under 29 C.F.R. § 2560.503-1.

**Right to Discovery**

Ms. Bingaman is pursuing two alternative theories of recovery. [See Doc #1 – Complaint.] Count I is brought pursuant to §1132(a)(1)(b) for recovery of wrongfully denied benefits and Count II alleges a breach of fiduciary duty stemming from a faulty process under §1132(a)(3). [*Id.*] A claim brought for equitable remedies under §1132 (a)(3) "flows from the process, not the denial of benefits itself," and is inherently separate and distinct from a claim under §1132 (a)(1)(b). *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017). Discovery is appropriate under both causes of action in this matter.

1) *Discovery is Necessary Under Ms. Bingaman's § 1132(A)(1)(B) Claim for Wrongful Denial of Benefits*

As Judge Nanette Baker recited, the law of this district and the 8th Circuit is that discovery is appropriate beyond the administrative record:

> In a wrongful denial of benefits case, a district court may permit the admission of additional evidence if the plaintiff shows "good cause" for the court to do so. *Brown v. Seitz Foods, Inc., Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). Discovery may be permitted to establish either a palpable conflict of interest or serious procedural irregularity. *See Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n.4 (8th Cir. 1998). Conflicts of interest exists whenever the same entity both determines benefits eligibility under an ERISA plan and pays the benefits out of its own pocket. *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 114, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. *Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865, 869 (8th Cir. 2008).

*Radle v. Unum Life Ins. Co. of Am.*, 2022 U.S. Dist. Lexis 145289 (E.D. Mo. Aug. 15, 2022).

Here, there are both sufficient conflicts of interest and procedural irregularities to justify discovery beyond the administrative record.

a. *Lincoln is Both the Decider and Payer of Benefits Under the LTD Plan*

It is undisputed that Lincoln is both the decider and payer of LTD benefits under the plan at issue, see [Doc #1 at ¶¶ 6-7] and [Doc #5 at ¶¶ 6-7], and bears an inherent conflict of interest. See *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); and *Sampson v. Prudential Ins. Co. of Am.*, No. 4:08CV1290 CDO, 2009 WL 882407 at *2 (E.D. Mo. Mar. 26, 2009) (holding that the inherent conflict of interest cannot be considered in a vacuum). Discovery is necessary because the administrative record is insufficient to determine if Lincoln's inherent conflict affected Lincoln's decision-making or review process. See *Stallings v. Procter & Gamble Disability, Committee*, No. 1:20-CV-270-MTS, 2021 WL 4902328, at *2 (E.D. Mo. Oct. 21, 2021). Nor is there any evidence in the claim file to support the conclusion that Lincoln properly shielded its employees from the conflict of interest.

Discovery is necessary for the Court to examine whether Lincoln's structural conflict influenced the claim review, and whether Lincoln maintained procedures sufficient to insulate claim personnel and retained reviewers from that conflict.

b. *Dane Street LLC Has a History of Biased Claims Review Practices*

Lincoln retained the services of its medical reviewers through the third-party entity Dane Street LLC. Dane Street LLC has a well-documented history of biased review practices that return reviews favorable to the financial position of the entity that pays them. *See Davidson v. Ascension Long-Term Disability Plan,* Case No. 4:17 CV 995 CDP (E.D. Mo. Oct 16, 2017); *Heartsill v. Ascension Health Alliance*, No. 4:17CV00155 ERW (E.D. Mo. Jul 11, 2017); *Counts v. United of Omaha Life Ins. Co.*, 429 F.Supp.3d 389 (E.D. Mich. 2019); and *Duncan v. Anthem Life Ins. Co.*, Case No. 20-CV-00767-JPG (S.D. Ill. Apr 02, 2021).

29 C.F.R § 2560.503-1(b)(7) requires that ERISA plan administrators make:

> decisions regarding hiring, compensation, termination, promotion, or other similar matters with respect to any individual (such as a claims adjudicator or medical or vocational expert) must not be made based upon the likelihood that the individual will support the denial of benefits.

Dane Street's well documented history stands in direct contrast with this obligation. Dane Street's practices include retaining physicians with minority views, tweaking reports to satisfy the entity retaining their services, and otherwise returning opinions that are inherently biased. Discovery into Dane Street LLC's retention of experts and control over the opinions is necessary to make sure that biased practices did not influence the medical opinions relied upon by Lincoln. This discovery is routinely permitted with regards to Dane Street LLC

In *Heartsill v. Ascension Health Alliance*, the plan administrator contracted with Dane Street LLC to obtain written medical opinions. No. 4:17cv00155, slip op. at 4-5. The medical opinions used almost identical language, despite being authored by different doctors with different specialties. *Id*. As a result, Judge Perry permitted written discovery that included: (1) the contract or agreement between the plan administrator and Dane Street; (2) any directions Dane Street provided to the reviewing physicians; and (3) the number of reviews the physicians have performed for Dane Street on behalf of the plan administrator. *Id*. at 5.

In *Davidson v. Ascension Long-Term Disability Plan* the Court found that discovery into Dane Street's practices were necessary due to its history of "render[ing] biased opinions on the ultimate issue of disability." *Davidson*, No. 4:17 cv 995 CDP, slip op. at 3-4. The claim file supported discovery into Dane Street's review process and including production of all drafts of the reports, the compensation structure, and communication between Dane Street and the plan administrator, as well as between Dane Street and reviewing physicians. *Id*. at 4-5.

The Court in *Duncan v. Anthem Life Ins. Co.*, found that the administrative record clearly established that the Dane Street retained physician Dr. N. Nicole Barry's opinion regarding the disabling condition at issue was directly contradicted by the American College of Rheumatology. No. 20-cv-00767-JPG, slip op. at 6-7. Additionally, evidence in the claim file established – like the reports at issue in *Heartsill v. Ascension* – that Dr. Barry had copied and pasted opinions language into reports for at least five other cases. *Id*. at 5. This evidence was sufficient to justify discovery into the relationship between Dane Street and the plan administrator, as well as the relationship between Dr. Barry and Dane Street. *Id*. at 6-7.

Here, just like the claimant in *Duncan*, Ms. Bingaman highlighted the deficiencies in Dr. Cirillo's report when compared to peer reviewed standards of care in Neurology. [Adm. Rec. at Lincoln/Bingaman 0221-0267]. Dr. Cirillo's opinions were directly contradicted by Ms. Bingaman's physicians and did not correlate to standards of care and well-established and accepted progression of the primary underlying condition of post-concussion syndrome. [*Id*.] In short, Dr. Cirillo's report is not supported by the general standard of care or the medical records.

Lincoln's response to this – as is indicated by the claim notes – was to go back to Dane Street for revisions to the opinion. The result being a modified report that cherry-picked incomplete and inadequate snippets of the medical record. As will be discussed further below, the medical records available at the time of denial firmly and unequivocally established that Ms. Bingaman's physician and therapists did not support a return to work.

Lincoln's review of the Ms. Bingaman's appeal was also predicated upon opinions that were obtained by Dane Street. Both of which collectively decided to ignore the objective medical testing indicating cognitive decline.

Discovery into the relationship between Lincoln and Dane Street and between Dane Street and its retained physicians, as nothing in the administrative record permits the Court to determine whether Dane Street has sufficient safeguards to prevent the same biased review practices identified in prior cases.

c. *Lincoln Had No Credible Evidence to Support Its September 19, 2024 Denial.*

Lincoln approved LTD benefits for Ms. Bingaman on October 17, 2023. Less than a year later Lincoln denied further payment of that benefit. The stated reason for the denial is that Ms. Bingaman no longer met the definition of disability under the plan. Because Lincoln had already approved benefits it must have had "new information that altered in some significant way the previous payment of benefits" otherwise the later denial of benefits weighs against the propriety of the denial. *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002) (finding that the review must focus on what changed between the grant of benefits and the subsequent denial); *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496 (8th Cir. 1989) (holding that relying on the same evidence for denial that had been previously used to support grant of benefits was improper); and *Miller v. Am. Airlines Inc.*, 632 F.3d 837 (3rd Cir. 2011) (stating that an administrator's decision is arbitrary and capricious if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law).

Information that alters the situation is usually a change in the definition of disability and/or new objective medical evidence. *McOsker*, 279 F.3d at 589. Here, the definition of disability did not change, nor is there convincing evidence that there was a change in Ms. Bingaman's functionality at the time – or subsequently – of the denial.

Lincoln relied upon a report from Dr. Cirillo, obtained through Dane Street, LLC. For the reasons stated above, there are strong indications that this report was obtained through a biased procedure and discovery is necessary to explore how the opinion was obtained.

Lincoln's "best evidence" consisted of isolated lines cherry-picked from medical records. When read in context, those records do not support termination of benefits.

First, Dr. Koo does acknowledge that Ms. Bingaman was performing some cognitively intense functions. Second Ms. Bingaman had completed/was discharged from speech therapy. However, these two items imply and specifically state an inability to return to work.

The Dr. Koo cited by Lincoln does establish that Ms. Bingaman is performing some cognitive tasks. [Adm. Rec. at Lincoln/Bingaman 0317]. However, the same note clearly establishes that Ms. Bingaman is unable to perform those tasks in a sustained manner, necessary for an 8-hour workday, five days a week. Specifically, it states:

> Patient is here to follow up regarding postconcussion recovery. Patient continues to receive full-time Long Term Disability benefits. Her Aflac claim finally closed after multiple appeals regarding benefits, after 5 months. Patient continues to have intermittent physical and brain fatigue, and is cognizant to recognize her limitations, and to take breaks when preparing her financial reports, grocery shopping online, working on her photobooks, managing her household, etc.

[*Id*]. This establishes that Ms. Bingaman needs breaks and is unable to perform sustained cognitive tasks. Although not expressly stated, it is heavily implied that Ms. Bingaman is unable to perform cognitive tasks throughout the course of an eight-hour workday.

The speech therapy discharge note relied upon by Lincoln **expressly** states that Ms. Bingaman was unable to return to work.

> • **Current Status:**
> • **Basic care**: 4/19/24 REEVLUATION/DISCHARGE: Client performs all ADL's and functional mobility with modified independence. She performs meal preparation and home management with modified independence (improved from maximal at IE) assistance. She has returned to driving any distance (improved from short distances) and has resumed community access. Client is eating regular diet with thin liquids. She requires modified independence, completing this more efficiently using strategies (improved from moderate at IE) with all personal affair management including medication and finances. She is completing her medication management with modified independence. She requires modified independence (improved from minimal assistance at IE) with the cognitive-communication demands for the home and community, and she experiences less cognitive fatigue, and minimal physical fatigue. She is not yet ready to return to full time employment.
> • **Work status**: Unable to work secondary to dysfunction.

[Adm. Rec. at Lincoln/Bingaman 0788].

There was no objective neurological cognitive testing in the claim file as of the date of denial. However, In January of 2025, Ms. Bingaman underwent a neuropsychological evaluation performed by Dr. Oliveri and at the direction of her primary care physician Dr. Koo. Dr. Oliveri's report clearly establishes objective cognitive decline:

> 1. **Prominent non-specific disorder of fundamental attention** –representing a cognitive disorder otherwise unspecified: The objective test data reflects levels of performance well below patients with established acquired brain-behavior dysfunction, due to the injury she sustained in July 2023 (per the severity indicators related to that injury). Specifically, on measures associated with attention/registration and processing speed, she is performing at exceptionally low levels -- exceeding patients with residual acquired MTBI, post-concussive sequelae at ~1 year 5 months post injury. Maximal neurocognitive recovery, following an injury of this severity, occurs within the early

[Lincoln/Bingaman 0186].

This report also clearly establishes that Ms. Bingaman's neuropsychological decline may be exacerbated by Ms. Bingaman's pre-existing mental nervous conditions, but it is unambiguous in its objective assessment of impairment. [*Id*].

In short, there was no objective medical evidence to support denial of LTD benefits in 2024 – or later. Once objective medical evidence was available it clearly indicated a deficiency. The lack of evidence at the time Lincoln made the initial denial necessitates discovery into Lincoln's review process to determine and guarantee that its inherent conflict of interest as both the decider and payer of benefits did not influence the denial. Such interference would have deprived Ms. Bingaman of the full and fair review she was entitled, and Lincoln was obligated to provide, under 29 C.F.R.§ 2560.503-1.

2. *Discovery is Necessary in Claims Brought Under §1132(a)(3)*

Discovery is appropriate in Plaintiff's §1132(a)(3) claim, with the only limitations being those contained in the Federal Rules of Civil Procedure. *Kostecki*, 2014 LEXIS 24858 at *4 (emphasis added).

Claims brought for breach of an administrator's fiduciary duties under §1132(a)(3) require discovery to explore the nature and extent of the purported conflict or irregularity that form the basis of the administrator's fiduciary duties. *Sampson v. Prudential Ins. Co. of Am.*, 4:08-CV-1290 CDP LEXIS 24858 (E.D. Mo. Ct. Mar. 26, 2009); *Kostecki v. Prudential Ins. Co. of Am.*, 4:14-CV-695 JCH LEXIS 144297 (E.D. Mo. Ct. Oct. 10, 2014); and *Friemon v. Nat'l Carriers' Conf. Comm.*, 2018 U.S. Dist. LEXIS 199142, *3 (E.D. Mo. Ct. Nov. 26, 2018).

Because the courts will conduct a more searching review of the breach of fiduciary duty claim, Plaintiff is entitled to discovery as it relates to this claim. *See Waldoch v. Medtronic*, Inc., 757 F.3d 822, 830 (8th Cir. 2014).

**Discovery Sought**

As a result of the procedural irregularities identified above Plaintiff seeks the following discovery:

1. Written discovery regarding internal guidelines, policies, claim handling manuals, and/or procedures – however named – applicable to LTD claim denials and appeals.
2. Written Lincoln policies for insulating claim personnel and reviewers from financial incentives.
3. Written discovery regarding internal guidelines, policies, claim handling manuals, hiring practices and/or procedures – however named – that govern Lincoln's retention of a contract medical reviewer, whether through a third-party vendor or otherwise.

4. Written discovery regarding agreements, invoices, referral volume, and compensation structure between Lincoln and Dane Street, LLC.
5. Deposition of a Rule 30(b)(6) witness – not to exceed 1 hour – to discuss all policies and procedures produced in written discovery.
6. A subpoena directed to Dane Street, LLC relating to its internal guidelines, policies, procedures, and/or practices (however named) relating to how it retains medical professionals to review matters, compensation scheme for the medical professionals that are retained, as well as, the editing, revisions, and follow-up relating to the opinions authored.

**Respectfully submitted,**

**DAVIS OLSZESKI, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis, MO58205
Adam J. Olszeski, MO66126
2704 Locust, Suite 202
St. Louis, MO 63103
(314) 876-7760
Fax: (314) 876-7877
matt@dodisabilitylaw.com
adam@dodisabilitylaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 1st day of July 2026 a copy of the foregoing was served via the Court's electronic filing system, upon all counsel of record.

*/s/Adam J. Olszeski*